UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-cv-22736-KMW-LMR

THE SMILEY COMPANY SPRL,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

## [PROPOSED] SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

**THIS MATTER** comes before the Court on the Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Plaintiff's Motion for TRO"). The Plaintiff, The Smiley Company SPRL ("Smiley" or "Plaintiff") moves, *ex parte*, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court has carefully considered the Motion, the record, and the governing law. For the reasons stated below, the Plaintiff's *Ex Parte* Application for Temporary Restraining Order is **GRANTED**.

## I.      FACTUAL BACKGROUND

Plaintiff is the owner of the following trademarks, which are valid and registered on the

Principal Register of the United States Patent and Trademark Office (collectively the "Smiley

Marks"):

| Trademark | Registration Number | Registration Date | Classes / Goods |
|---|---|---|---|
| SMILEY | 2,747,618 | 08/05/2003 | IC 003. US 001 004 006 050 051 052. G & S: non-medicated cosmetic preparations for slimming purposes, namely, skin creams, skin lotions, [skin pomades, rust removing preparations,] sun-tanning preparations for cosmetic purposes, [fabric softeners for laundry use, shaving soap, cotton sticks for cosmetic purposes, skin whitening creams, laundry bleach, scented wood, floor polish, hair color, hair dyes, hair waxing lotions, artificial eyelashes, shoe care products, namely, shoe wax, shoe polish, and shoe cream, depilatory wax, parquet floor wax, polishing wax for use on furniture and automobiles, leather preservatives, namely, polishing creams and waxes, cosmetic kits comprised of eyelash pencils, eyelid pencils, namely], shampoos, [drain openers, general purpose scouring powders, decolorants for cosmetic purposes, namely, hair decolorants, degreasing preparations not used in the manufacturing process for use on floors, make-up removing preparations, depilatory creams, stains removers, paint removers, rust and mineral removing cleaning preparations, laundry detergents,] toilet water, [anti-static dryers sheets, emery paper, emery cloth, emery |

| | | | |
|---|---|---|---|
| | | | boards, polish for furniture and flooring, incense, windscreen cleaning preparations,] essentials oils for personal use[, hair lacquer, hair bleaching preparations, sachets for perfuming linen, hair lotions, false nails, cotton balls for cosmetic purposes, abrasive paper for use on the nails, wallpaper cleaning preparations, paint stripper, pumice stones for personal use, adhesives for cosmetic use, namely, adhesives for use in connection with artificial hair, shaving preparations, varnish-removing preparations]. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 2,566,529 | 05/07/2002 | IC 028. US 022 023 038 050. G & S: Toys, namely plush stuffed toys and plastic balls, latex balls and squeezable balls [ ; sporting goods, namely knee pad ]. FIRST USE: 19880516. FIRST USE IN COMMERCE: 19880516s |
| SMILEY | 5,453,732 | | IC 003. US 001 004 006 050 051 052. G & S: Bubble bath, Deodorants for personal use, lotions, false nails. FIRST USE: 20150401. FIRST USE IN COMMERCE: 20180125 IC 004. US 001 006 015. G & S: candles. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 005. US 006 018 044 046 051 052. G & S: Food for babies, adhesive bandages, air deodorant, feminine hygiene pads, additive for nutritional purposes, sanitary napkins, car deodorants, vitamin supplements; babies' disposable diapers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |

| | | | IC 006. US 002 012 013 014 023 025 050. G & S: metal keys for locks. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 008. US 023 028 044. G & S: Spoons, hand tools, beard clippers, scissors, nail clippers, hair removing tweezers, ice picks, nail files, manicure sets, hammers, pedicure sets, pliers, electric and non-electric razors, screwdrivers and drills; electric and non-electric flat irons. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 009. US 021 023 026 036 038. G & S: Weighing apparatus, scales, calculating machines, sound amplifiers, anti-glare glasses, computer terminals, electric, neon or luminous signs, photographic cameras, magnetic encoded cards, cartridges for video games, life jackets, computer keyboards, electrical connectors, contact lenses, electrical sockets, eyeglass cases, blank magnetic data carriers, fire extinguishers, loudspeakers, telephone apparatus, sunglasses, computer memories, computer peripheral mouse pads, computer mouse, television sets, video cameras, and video game cartridges. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 014. US 002 027 028 050. G & S: Precious metals and their alloys sold in bulk, clocks, works of art of precious metal, jewelry, jewelry boxes, earrings, watches, bracelets, cuff links, brooches, necklaces. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125 |

| | | | IC 016. US 002 005 022 023 029 037 038 050. G & S: Adhesive tapes for stationery or household purposes, posters, photo albums, scrapbooks, lithographic prints, stickers, loose-leaf binders, boxes of cardboard or paper, rubber stamps, calendars, printing sewing patterns, note books, business cards, postcards, tags for index cards, iron-on transfers and plastic transfers, decalcomanias, graphic art reproductions, stationery folders, writing materials, namely, note books, post cards, ball-point pens, anniversary books, appointment books, autograph books, baby books, sketch books, sketch pads, bookmarks, daily planners, date books, address books, diaries, engagement books, envelopes, electric and non- electric erasers, fountain pens, pen or pencil holders, pen or pencil trays, pencils, artists' pencils, drawing pencils, pencil boxes, pencil cases, pen cases, stationery, and envelopes, rubber erasers, wrapping paper, pencils, stationery envelopes, blank or partially printed paper labels, announcement cards, writing paper, school supplies, namely, notebooks, pencil cases, toilet paper, pictures, printed matter, namely, magazines in the field of art, lithographs, table linen of paper, handkerchiefs of paper, stationery, paper stationery, paper banners, paper bags, unmounted photographs, art prints, pen and pencil trays, printed publications, namely, magazines, newspapers, graphic art reproductions, plastic or paper envelopes, bags and pouches for merchandise packaging, writing pads, fountain pens, and paper or plastic transparencies, paper towels, |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | embroidery design patterns, table mats of paper, pencil sharpeners. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125<br><br>IC 021. US 002 013 023 029 030 033 040 050. G & S: Combs, toilet brushes, water troughs, thermal insulated containers for food, terra-cotta or glass, figurines, table plates not of precious metal, brooms, cocktail picks, drinking flasks for travelers, drinking vessels, beer mugs, soap boxes, dispensing paper towels for household use, non-electric kettles, bottles sold empty, bottle openers, pitchers not of precious metal, non-electric toothbrushes, perfume burners, coffee services, not of precious metal, egg cups not of precious metal, beverage glassware, jugs, cookery molds, cooking utensils, toothpicks, cutting boards for the kitchen, trivets, toilet paper holders, soap dispensers, sponges for household purposes, scouring sponges for toilets, earthenware basins in the nature of bowls, household utensils, flower pots; gloves for household purposes, gloves for gardening, ice buckets, non-electric portable coolers for food and beverages, goblets, not of precious metal, mugs, not of precious metal, bottle- gourds, not of precious metal, crumb trays, dishes, soap holders, sponge holders, ironing boards, pepper shakers, garbage cans, trash cans, napkin rings, thermal insulated bags for food or beverages, statutes, statuettes, table plates, napkin holders, non-metal piggy banks, earthenware mugs, drinking glasses, tableware services not of precious metal. FIRST USE: |

| | | | 20130901. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 025. US 022 039. G & S: Clothing, namely, suits, dresses, t-shirts, sweatshirts, raincoats, shorts, stockings, cloth bibs, berets, hosiery, boots, suspenders, pants, baseball caps, golf caps, athletic shoes, masquerade costumes, hats, babies pants, neckties, sashes for wear, scarves, gloves, layettes, slippers, ear muffs, aprons, sportswear, namely, jogging suits, and training suits. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 026. US 037 039 040 042 050. G & S: Hair accessories, electric hair curlers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 027. US 019 020 037 042 050. G & S: carpets. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125 |
| | | | |
| | | | IC 028. US 022 023 038 050. G & S: Games, playthings, namely, toys in the nature of flying disks, sporting articles, golf balls, handballs, playground balls, soccer balls, baseballs, basketballs, bowling balls, footballs, tennis balls, rubber balls, sports balls, table tennis balls, volley balls, beach balls balloons, toys, namely, jigsaw puzzles; Christmas tree ornaments, party favors in the nature of small toys; namely, confetti. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |

| | | | |
|---|---|---|---|
| | | | IC 029. US 046. G & S: Meat. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 030. US 046. G & S: Sugar, pasta, corn flakes, chewing gum. FIRST USE: 20170301. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 032. US 045 046 048. G & S: Mineral and aerated waters, fruit juices. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 034. US 002 008 009 017. G & S: Cigarette cases, cigarette lighters, ashtrays not of precious metal, cigarette holders, not of precious metal, ashtrays of precious metal for smokers. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 035. US 100 101 102. G & S: Advertising and marketing. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 036. US 100 101 102. G & S: Credit card services, monetary exchange. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 038. US 100 101 104. G & S: Telecommunication services, namely, personal communication. FIRST USE: 20170701. FIRST USE IN COMMERCE: 20180125 |
| SMILEY | 2,970,055 | 07/19/2005 | IC 003. US 001 004 006 050 051 052. G & S: Soaps, bath gels, makeup, perfumes, body lotions, nail care preparations, cosmetic preparations for skin renewal, hair shampoos, hair gel. FIRST USE: |

| | | | |
|---|---|---|---|
| | | | 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 3,016,430 | 11/15/2005 | IC 009. US 021 023 026 036 038. G & S: Downloadable computer software program for use in attaching, icons or other symbols, in e-mail correspondence and instant messaging. FIRST USE: 20001200. FIRST USE IN COMMERCE: 20001200 |
| SMILEY | 2,801,529 | 12/30/2003 | IC 025. US 022 039. G & S: Clothing, namely, pullovers, [trousers] and shirts. FIRST USE: 19700000. FIRST USE IN COMMERCE: 19700000 |
|  | 5,348,135 | 12/05/2017 | IC 016. US 002 005 022 023 029 037 038 050. G & S: Printed matter, namely, children's books, stationery, greeting cards, note cards, post cards, posters, newspapers, printed calendars, printed forms, printed invitations, photo albums, scrapbooks, photographs; bookbinding materials, namely, bookbinding papers or cloth, bookbinding adhesive tape or glue; adhesive tapes for stationery or household purposes; artists' materials, namely, artists' paintbrushes, typeset printing blocks, printing type, art pads, art paper, paper, cardboard, dressmaking patterns, drawings, watercolors, paintings both framed and unframed; lithographic or engraved art objects; writing implements, namely, pens, pencils, fountain pens, artists' pencils; drawing instruments, namely, charcoal pencils, drawing pencils, pencil cases; typewriters and office requisites except furniture, namely, magnetic boards, file folders, desktop stationery cabinets; Printed instructional, educational, and teaching materials in the field of |

| | | | primary education; cardboard or paper boxes; paper products, namely, paper handkerchiefs, paper towels, paper table linen, toilet paper, babies' disposable napkins of paper and cellulose; bags, namely, paper or plastic for use as gift bags, paper bags or pouches, paper and plastic bags for merchandise packaging purposes, paper and plastic garbage bags; pamphlets in the field of fashion, home, decorating and licensing; prospectuses in the field of fashion, home, decorating and licensing<br><br>IC 018. US 001 002 003 022 041. G & S: Leather and imitation leather, animal skins and hides; trunks and suitcases; umbrellas, parasols and walking sticks; whips, harness and saddlery; wallets, purses not of precious metal; handbags, backpacks, wheeled bags; sports bags for climbers; sports bags for campers; traveling bags, beach bags, school bags, unfitted vanity cases; collars and clothing for animals, namely, pet clothing and collars; mesh shopping bags, mesh shopping nets for use in an automobile; leather bags or pouches |
|---|---|---|---|
| SMILEY | 6,428,755 | 05/14/2019 | IC 027. US 019 020 037 042 050. G & S: Bath mats; Rugs; Floor mats for vehicles. FIRST USE: 20110228. FIRST USE IN COMMERCE: 20190331 |

*See* Declaration of Nicolas Loufrani in Support of Plaintiff's Motion for TRO ("Loufrani Decl.") at ¶ 9 and Schedule B; *see also* Complaint (ECF No. 1), at ¶ 25. The Smiley Marks are used in connection with the design, marketing, and distribution of high-quality goods in the category identified above. *See id.*

Plaintiff is also the owner of the following copyrights registered in the United States of America:

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VAu000446942 | 1999 | Andazia International--Millennium 2000 T-shirts : no. 280-283, 287-289. |
| VAu000446948 | 1999 | Berkshire--Smiley babies outerwear, socks, Smiley rainwear, umbrellas, Smilette : no. BERK001-BER019. |
| VAu000446941 | 1999 | Commonwealth toy--Smiley Babies packaging labels : no. CTN01-CTN05. |
| VAu000304029 | 1998 | Freeze/Millennium 2000 T-shirts : no. FR001-FR118. |
| VAu000446947 | 1999 | Freeze--Millennium 2000 T-shirts : no. FR119-FR168. |
| VAu000446946 | 1999 | Home Group, Inc.--Smiley headwear : no. HG001-HG004. |
| VAu000456386 | 1999 | Jacques Moret Intimates/SHB intimates ... : no. JM045-JM068. |
| VAu000446943 | 1999 | Maru artwork--Smiley characters, millennium 2000 : no. MARU01-MARU06. |
| VAu000446940 | 1999 | Millennium 2000 socks : no. 6209-6248, 6250-6256. |
| VAu000456387 | 1999 | NTD Apparel, Inc. : no. NTD181-NTD280. |
| VAu000446944 | 1999 | Pro Specialties Group--Millennium 2000 : no. PS005-PS006. |
| VAu000446945 | 1999 | Ralph Marlin--Millennium 2000 boxers : no. RM001-RM005. |
| VAu000440872 | 1998 | "Smiley for kids" December 98. |
| PAu002457240 | 1999 | Smiley forever. |
| PAu002457241 | 1999 | Smiley trend book--fall/winter 2000-01. |

*See* Loufrani Decl. at ¶ 10; Complaint, at ¶ 32. The copyrighted works identified in Schedules C to the Golovlova Declaration hereto are collectively referred to herein as the "Copyrighted Works."

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to

be counterfeits, infringements, reproductions, or colorable imitations of the Smiley Marks and Copyrighted Works. *See* Loufrani Decl. at ¶¶ 15-18; Declaration of Sobrado in Support of Plaintiff's Motion for TRO ("Sobrado Decl.") at ¶ 5.

Although each of the Defendants may not copy and infringe each of the Smiley Marks for each category of goods protected and/or Copyrighted Works, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one or more of the Smiley Marks and/or Copyrighted Works. *See* Sobrado Decl. at ¶ 4, Schedule E. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Smiley Marks or Copyrighted Works. *See* Loufrani Decl. at ¶ 15.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and copyright protected products by the Defendants. *See* Loufrani Decl. at ¶¶ 15-18. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of, at least, one of the Smiley Marks and Copyrighted Works at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.; see also* Loufrani Decl. at ¶ 17. The Plaintiff conducted a review and visually inspected the Smiley branded items for which orders were initiated by Plaintiff's third party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id.*

## II.   LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not

granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.,* 415 U.S. 423, 439 (1974).

## III.   CONCLUSIONS OF LAW

The declarations the Plaintiff submitted in support of its *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A.     The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Smiley Marks, and that (2) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products which bear copies of the Smiley Marks.

B.     Because of the infringement of the Smiley Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Application for Temporary

Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

      1.     The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights;

      2.     There is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

      3.     There is good cause to believe that if the Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, the Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting the Plaintiff's ability to obtain meaningful relief.

      C.     The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

      D.     The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and

development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E.      Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the Smiley Marks.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.      In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of the Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby

**ORDERS AND ADJUDGES** that the Plaintiff's *Ex Parte* Application for Temporary Restraining Order (ECF No. __) is **GRANTED**, under the terms set forth below:

(1)     Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

a.     From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Smiley Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

b.     From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Smiley Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of

any of the Defendants; and

c.     From using any reproduction, counterfeit, copy, or colorable imitation of the Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

(2)     Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Smiley Marks, confusingly similar trademarks, or unauthorized copies of the Copyrighted Works on or in connection with all Internet

based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3)     Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4)     Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order,

a.     Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.  No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

b.     Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" hereto, as well as any other accounts of

the same customer(s); (ii) the identity and location of the Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; (iv) an identification of all products sold by Defendants using the Smiley Marks and/or Copyrighted Works; and (v) an identification of all sales of such products and the revenues derived therefrom.

(5)     Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6)     The Clerk of the Court is directed to issue a single original summons in the name of "The Individuals, Partnerships and Unincorporated Associations Identified in Schedule 'A' of the Complaint" that shall apply to all Defendants.

(7)     The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(8)     This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Smiley Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

(9)     This Order shall remain in effect for two weeks from the date of entry of this Order and expires on _____, 2023 at _____ AM/PM.

(10)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.  In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(11)     After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website, https://www.dropbox.com/scl/fo/lgb047hd2h1zx3nhoth45/h?dl=0&rlkey=kq0i48u2ul1oe5em5raiuhjc8 and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.  The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at https://www.dropbox.com/scl/fo/lgb047hd2h1zx3nhoth45/h?dl=0&rlkey=kq0i48u2ul1oe5em5raiuhjc8, or by other means reasonably calculated to give notice which is permitted by the Court.

(12)     A **hearing** is set before this Court on _____, **at** _____, at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction. The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

(13)     The Clerk shall file this Order under seal until further order of the Court.

**DONE AND ORDERED** in Miami, Florida this _____ day of _____, 2023 at __:__ AM/PM.

_____
**HONORABLE KATHLEEN M. WILLIAMS**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Sealed clerk